UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASEY HAYES PERRY,

       Plaintiff,                                Case No. 2:22-cv-11748
                                                  Honorable Sean F. Cox
v.                                               Mag. J. Jonathan J.C. Grey

JODI MCCLELLAN, et al.,

       Defendants.
_____/

**OPINION AND ORDER OF SUMMARY DISMISSAL**

Plaintiff Casey Hayes Perry, currently confined at the Thumb Correctional Facility in Lapeer, Michigan, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff, a diabetic, alleges Defendants Jodi McClellan, RN, and Sgt. Kyle Eddy violated his First and Eighth Amendment rights by being deliberately indifferent to his serious medical needs and by retaliating against him. (ECF No. 1, PageID.5.) Plaintiff has been granted leave to proceed without prepaying fees and costs. (ECF No. 2.)

Because none of Plaintiff's allegations rise to constitutional injury, the Court will summarily dismiss the Complaint. An explanation follows.

**I. Background**

Plaintiff is a diabetic who uses insulin to control his condition. In the standard procedure for delivery of insulin, staff nurses draw the insulin for the individual

diabetic prisoners, then provide the syringe to them to self-administer their individual doses. (Compl., ECF No. 1, PageID.33.) In his first claim, Plaintiff asserts that on several days in March 2021, McClellan handled his insulin in an unsanitary and unsatisfactory manner. (*Id.* at PageID.6.) She did not wear latex gloves, and she brought Plaintiff an "unwrapped, unsealed, unlabeled, or unmarked syringe needle, that had . . . unknown substances in" it. (*Id.* at PageID.19.) Plaintiff repeatedly asked McClellan if she brought the insulin bottle so he could identify the contents of the syringe she provided. McClellan did not bring it, answering once, "I know how to draw up insulin!" (*Id.*) Because McClellan refused to bring the vial to Plaintiff, he was unable to confirm the medication had been mixed correctly and that he was receiving the proper dose. (*Id.*)

In the same time period, McClellan refused to give Plaintiff his insulin several times, walking away when he asked about the vial. (*Id.* at PageID.19-20.) This resulted in Plaintiff suffering "high fevers, heavy sweating, poor blurred eye vision, dizziness, dehydration, stomach sickness, very hungry, irritab[ility, and] confus[ion]." (ECF No. 1, PageID.17, 19.)

Plaintiff submitted several "kites" to health care and grievances over McClellan's actions. (*Id.* at PageID.21-24.) He claims McClellan retaliated against him for those grievances, starting in early April 2021 and continuing through late June. (*Id.* at PageID.24.) McClellan retaliated by not preparing Plaintiff's insulin

2

correctly, that is, "refus[ing] to prepare my 70/30 Humulin insulin medication from being rolled completely mixed in my presence . . ." (*Id.* at PageID.24-25.) He reports McClellan told him she did mix the insulin in front of him, but that he was "distracted and talking to other inmates" and did not observe it. (*Id.* at PageID.25.)

On July 24, 2021, Plaintiff showed McClellan his Glucosemeter, which indicated his blood sugar was 454 mg/dl on his. Despite the very high reading, Plaintiff told her he only needed his standard 22 units of insulin. (*Id.* at PageID.26, 37.) McClellan responded that she would not give him his insulin. (*Id.* at PageID.25.)

Instead, McClellan instructed Plaintiff first to retest his blood. When he refused, she wrote him misconduct tickets for insolence and disobeying a direct order. (*Id.* at PageID.6, 34.) Plaintiff claims the disciplinary action was retaliatory over prior grievances he had filed against her. (*Id.* at PageID.6, 34.)

Plaintiff's complaint explains McClellan's order to Plaintiff to retest his blood sugar. She told him protocol requires that a test result over 400 mg/dl requires verification by the nurse administering insulin. (*Id.* at PageID.30.) She also explained at that blood sugar level, "standard protocol" requires a doctor be "called [because] additional insulin may need to be administered." (*Id.*) Plaintiff quotes one of his grievance responses which stated retesting was required under a standard healthcare protocol "for patients with blood sugar levels over 400." (*Id.* at PageID.32.)

3

Plaintiff's allegations surrounding whether he subsequently received his insulin on July 24 and at what dosage are unclear and conflicting. Again, he told McClellan he only wanted his standard 22-unit dose of insulin. (*Id.* at PageID.37.) He repeatedly alleges that "McClellan had deliberately given Plaintiff 4 extra units" of his insulin "without the Plaintiff's knowledge or consent" (*id.* at PageID.6, 9, 37), and argues that it caused him to be hypoglycemic, causing fevers, nausea, and other symptoms "from July 24, 2021 to July 25, 2021." (*Id.* at PageID.8.) Elsewhere Plaintiff observes that "*if* Defendant, McClellan, RN had given four extra units of . . . insulin without Plaintiff's knowledge[,]" it was an "unlawful act" on her part. (*Id.* at PageID.6) (emphasis added.)

The grievance responses Plaintiff quotes are similarly in conflict. One informed Plaintiff that on July 24, McClellan had provided him 26 units of insulin. (*Id.* at PageID.6.)) Another response noted that Plaintiff's own Step II appeal reported that he "elected to take less than the 26 units provided." (*Id.* at PageID.33.)

Defendant Eddy became involved in the July 24, 2021, dispute when Plaintiff explained to him McClellan refused to give him his insulin. (*Id.* at PageID.29.) After Eddy spoke to McClellan, he ordered Plaintiff to "re-stick yourself, so you can get your insulin!" (*Id.*) Plaintiff asserts Eddy "used threats, harassment, and retaliation to force Plaintiff to re-stick himself causing unwanted self-inflicting injury and

4

pain"; among other threats, Eddy told Plaintiff he would be placed in segregation if he did not follow the order. (*Id.* at PageID.7, 29.)

Plaintiff requests injunctive relief against Defendants to prevent threats and retaliation during litigation proceedings. (*Id.* at PageID.42.) He also seeks compensatory and punitive damages in the amounts of $480,000 from McClellan and $100,000 from Eddy. (*Id.* at PageID.43-45.)

## II. Legal Standard

Under the Prison Litigation Reform Act ("PLRA"), the Court is required to dismiss *sua sponte* an *in forma pauperis* complaint before service if it determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The dismissal standard under the PLRA is equivalent to that of Federal Rule of Civil Procedure 12(b)(6), as clarified by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). When evaluating a complaint under that standard, courts "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). "[D]etailed allegations" are not necessary, but under Rule 8(a) the pleading must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Courts need not "accept as true a legal conclusion couched as a factual allegation[,]" and any "naked assertion[s]" require "further factual enhancement" to comply with Rule 8(a). *Id*. at 555, 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 570).

A *pro se* civil rights complaint is to be construed liberally. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Such a complaint "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To state a civil rights claim under 42 U.S.C. § 1983, "a plaintiff must set

6

forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (citation omitted).

### III. Discussion

#### A. Deliberate indifference claims

The Eighth Amendment protects incarcerated people against deliberate indifference to their serious medical needs. *Murray v. Dep't of Corr.*, 29 F.4th 779, 786 (6th Cir. 2022) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference constitutes the "unnecessary and wanton infliction of pain" which may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Newsome v. Peterson*, 66 F. App'x 550, 551 (6th Cir. 2003) (citing *Estelle*, 429 U.S. at 104-05). A constitutional claim for the deprivation of adequate medical care requires a prisoner to plead facts showing "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).

7

"A plaintiff need not show that the defendant acted with the very purpose of causing harm, but must show something greater than negligence or malpractice." *Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). When a nurse or doctor provides medical care to a prisoner "carelessly or inefficaciously, . . . he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th. Cir. 2001).

The Sixth Circuit further "distinguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment"; regarding the latter, courts are "generally reluctant to second guess medical judgments." *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)) (internal quotation marks omitted). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment are also insufficient to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995).

Under the Eighth Amendment, "[t]he test to determine whether [a defendant] acted with 'deliberate indifference' has an objective and subjective component." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). To succeed on a claim

of deliberate indifference, the plaintiff must offer evidence on both the objective serious medical need, and the defendant's subjective deliberate indifference to it. *Farmer*, 511 U.S. at 834.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 707 (citing *Farmer*, 511 U.S. at 837).

The first question before the Court is whether Nurse McClellan was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when she failed to provide him his insulin on several occasions, and when she may have provided him a dose that was four more units than his standard dose. The Court concludes Plaintiff has not adequately pleaded McClellan's deliberate indifference under either circumstance and has thus failed to state a claim upon which relief may be granted.

Starting in mid-March 2021, Plaintiff repeatedly objected to how McClellan administered his insulin: she did not show him the bottle from which the insulin was

9

taken, he did not know whether she "rolled" the vials for appropriate mixing, the syringe was unlabeled and her ungloved hands unsanitary. (ECF No. 1, PageID.6, 19, 22.) He complains that when he asked questions, McClellan walked away and did not provide him his insulin. (*Id.* at PageID.6, 19.) Plaintiff observes correctly he has a Constitutional right to refuse medical treatment. (ECF No. 1, PageID.32.) *See Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir. 1996) (citations omitted) ("The Supreme Court has held that individuals in state custody enjoy protectable liberty interests to . . . to refuse medical treatment . . .")

At the same time, Plaintiff asserts he never refused his insulin. (ECF No. 1, PageID.19.) But in the face of Plaintiff's many complaints, questions, and demands to McClellan, it would not have been unreasonable for her to infer he was rejecting the medication over those issues. Her decision to deny Plaintiff insulin under these circumstances is no more than negligent, or at most malpractice. What it is not is an Eighth Amendment violation.

Nor did McClellan violated Plaintiff's constitutional rights over the purported extra four units of insulin she may or may not have provided him on July 24, 2021. First, Plaintiff's allegations around this incident are self-conflicting to the point they do not provide McClellan fair notice of Plaintiff's claim against her. *Twombly*, 550 U.S. at 555. More importantly, these circumstances present not a denial of care, but

10

Plaintiff's disagreement with the treatment he was provided. This does not support a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154–55.

Next, Plaintiff's deliberate indifference claim against Defendant Eddy is even weaker than those against McClellan. Eddy's role as a corrections officer was to reinforce McClellan's order to Plaintiff to recheck his blood sugar. A portion of the subjective component is again easily met: It is indisputable Eddy knew Plaintiff was a diabetic in need of insulin. But the action Eddy took – directing Plaintiff to recheck his blood sugar level – did not present a "substantial risk" to Plaintiff that Eddy disregarded by his actions. *Comstock*, 273 F.3d at 707

Plaintiff objects to the unnecessary infliction of pain and potential bleeding the extra blood sugar test would cause him. (ECF No. 1, PageID.6, 17-18, 25-26.) There is no doubt finger-pricks for blood testing are unpleasant and potentially painful. But because Plaintiff is an insulin-dependent diabetic, he tolerates that discomfort regularly, perhaps even daily. Ordering Plaintiff to test his own blood sugar thus did not present a "substantial risk" to him.

Nor was Eddy's order the "unnecessary and wanton infliction of pain" the Eighth Amendment forbids. *Estelle*, 429 U.S. at 104. Rather, rechecking his blood sugar was *necessary* under the diabetes protocols controlling Plaintiff's treatment. That Plaintiff disagreed with the necessity of the recheck, or objected to the discomfort of it, does not make it a constitutional injury.

11

Accordingly, Plaintiff has failed to state a deliberate indifference claim against either Defendant McClellan or Eddy.

**B. Retaliation claims**

Plaintiff next argues Defendant McClellan retaliated against him from April 3, 2021, to June 26, 2021, by not rolling the insulin bottle for complete mixing to ensure he received a proper dose. (ECF No. 1, PageID.24.) He also says the misconduct ticket she issued against him for the July 24, 2021, dispute was retaliatory. (*Id.* at PageID.8.) In both cases, he asserts she was motivated by his grievances against her. Plaintiff also argues Eddy used threats and retaliation against him when he forced Plaintiff to recheck his blood sugar level. (*Id.* at PageID.7.)

Plaintiff has failed to state a claim of retaliation against either Defendant. Establishing retaliation requires a plaintiff to allege plausibly that: "(1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) . . . the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)).

Filing grievances against prison officials on one's own behalf is "undisputed[ly]" protected by the First Amendment. *Hill*, 630 F.3d at 472 (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). This includes oral

complaints; that is, grievances need not be in writing to be protected. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).

Next, an adverse action is one that is "*capable* of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Harbin-Bey*, 420 F.3d at 579 (citing *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002)) (emphasis in original). Even a threat may satisfy this standard, if the threat may deter the protected conduct. *Hill*, 630 F.3d at 472 (citing *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009)). "[B]ecause 'there is no justification for harassing people for exercising their constitutional rights,' the deterrent effect of the adverse action need not be great to be actionable. *Id.* at 473 (citing *Thaddeus-X*, 175 F.3d at 397). At the pleading stage, a plaintiff must "'merely . . . establish the factual basis for his claim that the retaliatory acts amounted to more than a de minimis injury.'" *Id.* (quoting *Bell*, 308 F.3d at 606).

To meet the third prong of *Thaddeus-X*, causation, a plaintiff must allege "that his protected conduct was a motivating factor" for the retaliatory acts. *Maben*, 887 F.3d at 262 (quoting *Thaddeus–X*, 175 F.3d at 399); *see also Hill*, 630 F.3d at 475 (citing *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005)) (adverse action must have been "motivated at least in part" by the protected conduct). "[R]etaliation 'rarely can be supported with direct evidence of intent.'" *Harbin-Bey*, 420 F.3d at 580 (citing *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Different and unfair

treatment of a prisoner based on his protected conduct may support an inference of retaliatory intent. *Thomas*, 481 F.3d at 442. So may "temporal proximity between protected conduct and retaliatory acts . . ." *Maben*, 887 F.3d at 268 (citations omitted). Generally, though, temporal proximity alone is insufficient to establish a retaliatory animus. *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 525–26, (6th Cir. 2010)).

And while plaintiffs may rely on circumstantial evidence, they must still provide "specific, nonconclusory allegations" linking their conduct to the defendants' retaliatory acts. *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2012). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts'" will not suffice. *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (requiring "concrete and relevant particulars").

Plaintiff has met the first two prongs: His grievance writing is protected conduct, and McClellan's failure to mix insulin, which may cause the dosage to be incorrect, is an adverse action that may deter protected conduct. "[D]elay in treatment and discontinuance of medication would likely deter a prisoner . . . who believed he needed the medication to avoid the symptoms from which he allegedly suffered." *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014) (citation omitted)

Regardless, Plaintiff's claim fails on the third prong. Plaintiff provided no "specific, nonconclusory" facts to support finding a retaliatory motive. *Spencer*, 506 F. App'x at 396. And temporal proximity does not demonstrate McClellan acted with a retaliatory animus. Plaintiff filed grievances and/or sent healthcare kites regarding McClellan on March 14, and 19, 2021, and appealed the denial of his grievances on April 16 and June 4. (ECF No. 1, PageID.19-23.) McClellan's alleged retaliation against him by not rolling the insulin bottle for complete mixing, thus risking an incorrect dose, began on April 3, 2021, and ran to June 26, 2021. (ECF No. 1, PageID.24.) While there is an overlap between events, the relative timing of Plaintiff's specific protected conduct and McClellan's actions do not lead to an inference one motivated the other.

Plaintiff also charges McClellan with retaliation for filing a false misconduct report against him on July 24, 2021. Plaintiff's own recitation refutes those claims. Plaintiff's allegations include his adamant refusal to recheck his blood sugar, expressed in bold and with numerous exclamation marks. (ECF No. 1., PageID.28-29.) This corresponds with McClellan's description of Plaintiff continuing to shout at her that he was not going to retest himself. (*Id.* at PageID.27-28.) The complaint also includes excerpts from institutional responses to Plaintiff's grievances and kites, explaining McClellan was attempting to comply with a nursing protocol which requires a second blood sugar check and a call to the medical provider when a

prisoner's blood sugar level exceeds 400 mg/dl. (*Id.* at PageID.30-32.) McClellan's motivations were neither false nor retaliatory, but were an appropriate response to Plaintiff's behavior and the circumstances.

As to Eddy, Plaintiff alleges he used threats and retaliation to make him retest his blood sugar by threatening him with segregation or a DDO misconduct ticket. But Eddy's actions were in aid of McClellan's order, so the retaliation analysis is the same. Eddy's motive was the enforcement of the healthcare protocol and ensuring Plaintiff complied with it and McClellan's orders. It was not retaliatory.

### IV. Conclusion

For all the reasons stated above, Plaintiff has failed to state a claim against either Defendant for which relief may be granted.

Accordingly, it is **ORDERED** that the Complaint is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c).

Plaintiff may not proceed *in forma pauperis* on appeal, as an appeal could not be brought in good faith.

**SO ORDERED**.

Dated: November 17, 2022            s/Sean F. Cox
                                                     Sean F. Cox
                                                    U. S. District Judge